IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE FIRST LIBERTY INSURANCE CORPORATION,** a/s/o Rodney and Jodi Wooten,<br><br>Plaintiff,<br><br>v.<br><br>**HAIER US APPLIANCE SOLUTIONS, INC.**, *d/b/a GE Appliances*, et al.,<br><br>Defendants. | CIVIL ACTION<br><br>No. 23-2268-KSM |

## MEMORANDUM

**MARSTON, J.** September 8, 2023

    Plaintiff The First Liberty Insurance Company, as subrogee for its insureds, Rodney and Jodi Wooten, brings this product liability case against Defendants Haier US Appliance Solutions, Inc., doing business as GE Appliances ("GE Appliances"), Whirlpool Corporation, Samsung Electronics America, Inc., and Sanyo North America Corporation. (Doc. No. 1 at 14.) GE Appliances moves to dismiss the Complaint. (*See* Doc. No. 5.) For the reasons discussed below, the motion is granted in part and denied in part.

**I.    BACKGROUND**

    On February 19, 2021, the Wootens' home sustained significant fire damage, and an investigation revealed that the fire originated with a defect in the control panel of the Wootens' Kenmore-brand microwave. (Doc. No. 1 at 16.) According to the Complaint, Defendants are "corporations that manufactured microwaves and more specifically, manufactured the Kenmore microwave . . . that was in the subject property on February 19, 2021." (*Id.* at 15.) As of May 2023, First Liberty had paid the Wootens more than $1 million under their insurance policy for

fire related damages. (*Id.* at 16.) As subrogee to the Wootens' rights, First Liberty filed this action on February 17, 2023 in the Court of Common Pleas for Philadelphia County. (*See generally id.*) The Complaint asserts five counts against each Defendant: (1) strict liability, (2) negligence, (3) breach of implied warranty of merchantability, (4) breach of the implied warranty of fitness for a particular purpose, and (5) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (*Id.* at 16–23.)

GE Appliances, with the consent of the other Defendants, removed the case to this Court on June 14, 2023. (*See* Doc. No. 1 at 7.) GE Appliances now moves to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). (*See* Doc. No. 5.) First Liberty opposes that motion. (Doc. No. 11.)[1]

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[1] Although First Liberty has technically opposed the motion to dismiss, its opposition brief includes only a boilerplate discussion of the standard of review under Rule 12(b)(6) and three sentences of analysis:

> Defendant fails to show that Plaintiff's Complaint contains insufficient facts to state claims for relief or should be otherwise dismissed or amended. Plaintiff's Complaint speaks for itself (See Exhibit A - Plaintiff's Complaint). Additionally, Defendant's Motion to Dismiss is premature as Plaintiff cannot schedule the destructive testing on the subject product to determine the proper manufacturer and seller, until all Defendants have answered Plaintiff's Complaint.

(Doc. No. 11 at 8.) This cursory response falls well below the expectations of this Court and the requirements outlined in the Local Rules. *See* E.D. Pa. Local R. 7.1(c) (requiring that every motion be "accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion" and that the opposing party provide "a brief in opposition"); *Miller v. Cadmus Commc'ns*, Civil Action No. 09–cv–02869, 2010 WL 762312, at *5 (E.D. Pa. Mar. 1, 2010) ("Pursuant to Local Rule 7.1(c), all litigants are required to address substantive matters in a meaningful manner."); *Tata v. Lindcrest Apartments*, Civil Action No. 06-CV-00798, 2008 WL 11515275, at *1 n.1 (E.D. Pa. Oct. 9, 2008) ("Fully developed legal argument, citation to legal authority, and discussion of the relevant facts aid this Court in performing its duty, and ultimately in serving the ends of justice. Any brief in opposition or any other memorandum of law that is lacking even a modicum of these elements is woefully insufficient and unexcusable." (quotation marks omitted)).

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  In making this determination, the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations.  *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  The court is not, however, "compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).

### III.   DISCUSSION

GE Appliances argues that dismissal is appropriate because First Liberty has not identified the manufacturer or seller of the Wootens' microwave with specificity and the Complaint is an improper "shotgun pleading."  (Doc. No. 5 at 8–13.)  In the alternative, it argues that First Liberty has failed to plead a claim for breach of the implied warranty of fitness for a particular purpose (Count IV) or for violations of the UTPCPL (Count V), and First Liberty's broad request for attorneys' fees is inappropriate.  (*Id.* at 13–19.)  The Court addresses each argument in turn.

#### A.   Identification of Manufacturer and Seller

First, GE Appliances argues that First Liberty's claims, which are based in negligence and strict liability, fail at the pleading stage because First Liberty has not identified the manufacturer or seller of the allegedly defective microwave with specificity.  (*See* Doc. No. 5 at 8–11.)  To state a cause of action sounding in negligence, the plaintiff must allege facts tending

to show:  "(1) a duty on the part of the defendant to conform to a certain standard of conduct with respect to the plaintiff, (2) a failure by the defendant to so conform, (3) a reasonably close causal connection between the defendant's conduct and some resulting injury to the plaintiff." *Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 967 (Pa. Super. Ct. 1985). Pennsylvania recognizes the "general rule requiring identification of [the defendant] as the manufacturer or seller of the particular offending product, before [the plaintiff's] injuries may be found to be proximately caused by some negligence of [the defendant]." *Id.* at 967–68 (explaining that "[a]bsent such identification, there can be no allegations of duty, breach of duty or legal causation, and hence there can be no liability"); *accord Long v. Krueger, Inc.*, 686 F. Supp. 514, 517 (E.D. Pa. 1988).

In addition to a negligence cause of action, a plaintiff may bring a claim for strict liability against "one who sells [or manufactures] any product in a defective condition unreasonably dangerous to the user or consumer." *Cummins*, 495 A.2d at 968.  To state a strict liability cause of action, the plaintiff must "allege a sale or other commercial transfer of a product by the defendant." *Id.*  This necessarily requires the plaintiff to identify the defendant who manufactured the allegedly deficient product, and failure to identify the offending product and its manufacturer or seller is "a fatal deficiency" to such a claim.  *Id.* at 968–69; *see also Long*, 686 F. Supp. at 517 (citing *Cummins* for the proposition that "to state a cause of action for strict liability in tort, a plaintiff must allege a sale or other commercial transfer of a product by the defendant he sued . . . .  Because the plaintiff [in *Cummins*] could not identify the manufacturer of the product that allegedly injured him, he was unable to establish that the defendant made the requisite sale or other commercial transfer of the product").

Relying on this case law, GE Appliances argues that First Liberty has not stated a cause

4

of action sounding in negligence or strict liability because it has not identified which Defendant manufactured the microwave at issue. (Doc. No. 5 at 11.) This argument is premature. Unlike the cases cited by GE Appliances, this is not a case where the allegedly defective product is missing or has been destroyed. *Contra. Long*, 686 F. Supp. at 517 (emphasizing that the plaintiff could have "obtained or preserved as evidence the very stool that is alleged to have injured him" but he "did not attempt to do so"); *Layton v. Blue Giant Equip. Co. of Can. Ltd.*, 599 F. Supp. 93, 95 (E.D. Pa. 1984) (noting that the "identity of the manufacturer of the second lift-jack cannot be determined"); *Cummins*, 495 A.2d at 966 ("The issue is whether appellant, who cannot identify the particular manufacturer of the tire and rim assembly which allegedly caused his injury, or in fact the offending product itself, can maintain an action against those manufacturers who produced substantially all of the particular parts of the machinery."). To the contrary, First Liberty has the microwave in its possession and claims it can specifically identify which Defendant manufactured it, but only through testing that will destroy the microwave. (Doc. No. 11 at 8.) To avoid potential spoliation issues, First Liberty necessarily had to name all potential manufacturers as defendants so that each Defendant's expert has an opportunity to examine the microwave before it is destroyed. Accordingly, the Court finds GE Appliances's argument better addressed after discovery, at summary judgment.[2]

---

[2] Indeed, many of the cases that deal with this issue were decided at summary judgment, after the plaintiff had an opportunity to identify the manufacturer through discovery. *See, e.g.*, *Long*, 686 F. Supp. at 520; *Layton*, 599 F. Supp. at 95. Even in *Cummins*, where the Pennsylvania Superior Court affirmed dismissal of the complaint pre-discovery, the court emphasized that it was doing so because there was no way for the plaintiff to identify the manufacturer:

> Appellant contends the sustaining of appellees' preliminary objections prematurely terminated discovery. Appellant professes it remains his intention to identify the tortfeasor. . . . However, the fact remains that the offending product is unavailable for inspection, and therefore, appellant is precluded from identifying the manufacturer or supplier. This is not a defect which could be corrected by further discovery or by granting

Given the unique circumstances of this case, the Court denies GE Appliances's motion to dismiss on this ground.  If First Liberty's testing proves unsuccessful, and it is unable to identify which of the Defendant(s) sold or manufactured the Wootens' microwave, then GE Appliances may raise this argument again at summary judgment.

### B.     Shotgun Pleading

Next, GE Appliances argues that the Complaint is an improper "shotgun pleading." (Doc. No. 5 at 11.)  A shotgun pleading is a complaint that "'to one degree or another, and in one way or another,'" fails "'to give the defendants adequate notice of the claims against them and the grounds up which each claim rests.'" *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)); *cf. Hynson ex rel. Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988) (criticizing "the all too common shotgun pleading approach").  As relevant here, a complaint may amount to a shotgun pleading if it "'asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.'" *Id.* (quoting *Weiland*, 792 F.3d at 1321–23).[3]

GE Appliances argues that First Liberty's Complaint is such a shotgun pleading because it "makes no attempt to distinguish among the defendants, instead, taking the 'shotgun

---

                    appellant leave to amend his complaint, since the opportunity to make the
                    necessary identification has been irretrievably lost.

495 A.2d at 968.

[3] There are three other "types" of shotgun pleadings:  "(1) 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts'; (2) a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'; [and] (3) a complaint that does 'not separate into a different count each cause of action or claim for relief.'" *Bartol*, 251 F. Supp. 3d at 859 (quoting *Weiland*, 792 F.3d at 1321–23).

6

complaint' approach and simply naming a number of entities that may or may not have manufactured or sold Kenmore microwaves like the one involved in this litigation." (Doc. No. 5 at 13.) For the reasons discussed in the previous section, the Court rejects GE Appliances's suggestion that First Liberty has taken a scattershot approach to bring in every possible defendant after little to no investigation. To the contrary, First Liberty filed its eight-page Complaint against the four Defendants only after determining that it could not identify the manufacturer and seller without destroying the microwave at issue and after researching the companies that manufactured and sold the Kenmore-brand microwaves during the relevant period. (*See* Doc. No. 1 at 15; Doc. No. 11 at 8.) Although each Defendant is alleged to have manufactured and/or sold the microwave owned by the Wootens—a factual impossibility—it was done with the understanding that after testing, the sole manufacturer and seller will have been identified. (*See* Doc. No. 11 at 8.) This case is thus distinct from those cases where the court found the complaint amounted to a shotgun pleading. *Contra. Bartol*, 251 F. Supp. 3d at 856, 860 (fifty-four page complaint, which asserts 13 civil rights counts against various combinations of at least seven distinct defendants—many of whom "were not present during the events at issue in this case"—and which frequently "adopts the allegations of all preceding counts"); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("[The complaint] is fifty-eight pages long. It names fourteen defendants, and all defendants are charged in each count. The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of. Each count incorporates by reference the allegations made in a section entitled 'General Factual Allegations'—which comprises 146 numbered paragraphs—while also incorporating the

allegations of any count or counts that precede it. The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies."); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997) ("The complaint offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants associated with the McDonnell Elementary School.").

Moreover, although four Defendants are named, they are named in the alternative, such that—except for the deficiencies discussed later in this Memorandum—GE Appliances has adequate notice of the claims being brought against it. *See Milo, LLC v. Procaccino*, CIVIL ACTION NO. 16-5759, 2020 WL 1853499, at *10 (E.D. Pa. Apr. 13, 2020) ("[W]hether a complaint is an impermissible shotgun pleading is not wholly dependent on whether it incorporates all preceding paragraphs or names multiple defendants, but on whether the complaint 'gives the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" (quoting *M.B. v. Schuylkill County*, 375 F. Supp. 3d 574, 587 (E.D. Pa. 2019))); *id.* ("Here, the Joinder Complaint is only ten pages long and specifically identifies each Joinder Defendant. It specifically alleges that Movants manufactured and supplied defective windows that were used in the home. Attached to the Joinder Complaint is the invoice for the windows. Moreover, it is clear from the Joinder Complaint and Plaintiff's Amended Complaint that Plaintiff is suing Third-Party Plaintiffs for defects in the construction of the home, including specific problems with windows. Although each claim incorporates all the preceding paragraphs and names multiple defendants, Movants are on notice of the claims against them and the grounds upon which these claims rest." (internal citations omitted)).

Accordingly, the motion to dismiss is denied on this ground as well. GE Appliances's broad attacks on the Complaint having failed, the Court turns to its alternative arguments related to dismissal of Count IV, Count V, and the request for attorneys' fees.

### C. Breach of Implied Warranty of Fitness for a Particular Purposes (Count IV)

In Count IV, First Liberty claims that each Defendant breached the implied warranty of fitness for a particular purpose. (Doc. No. 1 at 19–20.) Under Pennsylvania law, when a "seller at the time of contracting has reason to know: (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods; there is. . . an implied warranty that the goods shall be fit for such purpose." 13 Pa. Stat. & Cons. Stat. § 2315; *see also Gall ex rel. Gall v. Allegheny Cnty. Health Dep't*, 555 A.2d 786, 790 (Pa. 1989) ("A warranty of fitness for a particular purpose is based upon a special reliance by the buyer on the seller to provide goods that will perform a specific use envisaged and communicated by the buyer."). The comments to § 2315 distinguish a product's "particular purpose" from its "ordinary purpose," explaining that the phrase "particular purpose" contemplates "a specific use by the buyer which is particular to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." 13 Pa. Stat. & Cons. Stat. § 2315, cmt.; *see also James v. United States*, Civil Action No. 19-04627, 2020 WL 1624883, at *4 (E.D. Pa. Apr. 2, 2020) ("A product's 'ordinary purpose,' by contrast, includes those purposes for which the product is customarily used.").

GE Appliances argues that Count IV must be dismissed because First Liberty "does not specify who purchased the microwave in question, and therefore fails to allege any 'particular purpose' required by the buyer or that the buyer expressed that purpose or relied on GE Appliances to select a suitable product." (Doc. No. 5 at 14–15.) Instead, the allegations in the

9

Complaint suggest that the microwave was being used for its ordinary purpose, a fact that GE Appliances views as fatal to First Liberty's particular purpose claim. (*Id.* at 15.) The Court agrees. The Complaint does not allege any facts from which the Court can infer that the Wootens' microwave was being used for a particular purpose, as opposed to its ordinary purpose, or that a particular purpose was conveyed to any Defendant. To the contrary, the Complaint suggests that the microwave was being used for its ordinary purpose of heating food[4] when an issue in the control panel started the fire. (*See* Doc. No. 1 at 16; *see also id.* at 19 (alleging that the microwave was "unfit for the ordinary purposes that such a product is used"); Doc. No. 11 at 3 ("Defendants manufactured and sold the subject Kenmore microwave containing one or more defects, which rendered it not of merchantable quality and unfit for the ordinary purposes that such a product is used.").) Accordingly, the Court grants the motion to dismiss Count IV. *See Morello v. Kenco Toyota Lift*, 142 F. Supp. 3d 378, 390 (E.D. Pa. 2015) (granting summary judgment on the plaintiff's implied warranty for particular purpose claim because "[a] safe, defect-free forklift goes to its 'ordinary purpose' not its 'particular purpose'"); *James*, 2020 WL 1624883, at *4 ("James fails to allege that the hospital intended to use the Symbia Evo machine for a 'particular purpose' other than its ordinary purpose of performing imaging studies on

---

[4] The Complaint does state that "Defendants knew or should have known that the [microwave] at the time of sale was intended to be used *for the purpose of drying clothes* in a residential property." (Doc. No. 1 at 20 (emphasis added).) In its motion, GE Appliances assumes this statement a typographical error. (Doc. No. 5 at 14 n.3.) First Liberty does not correct that assumption in its response brief. (*See generally* Doc. No. 11.) Accordingly, the Court also assumes it is a typographical error, as there are *no* other allegations suggesting the microwave was being used to dry clothes when the fire started. Nevertheless, even if we were to accept that the microwave was being used for this "particular purpose," the Court would still dismiss Count IV because First Liberty has not alleged that this "particular purpose" was communicated to GE Appliances or any other Defendant. *See* Pa. Stat. & Cons. Stat. § 2315 (requiring that the "seller at the time of contracting has reason to know" of the particular purpose); *cf. Piezo Crystal Co. v. Uddeholm Corp.*, 870 F. Supp. 589, 599 (M.D. Pa. 1994) ("Piezo has also failed to present evidence that Uddeholm had reason to know at the time of sale that Piezo had a particular purpose for which the goods were required. Accordingly, Uddeholm is entitled to summary judgment as a matter of law regarding Piezo's allegations of breach of the warranty of fitness for a particular purpose . . . .").

patients. Nor does he allege that Siemens knew of this unstated purpose."); *see also Gall ex rel. Gall*, 555 A.2d at 790 ("The sale of water for drinking and household use does not carry with it the implied warranty of fitness for a particular purpose, therefore, the sustaining of preliminary objections in the nature of a demurrer to this count was proper.").[5]

### D. Violations of the UTPCPL (Count V)

In Count V, First Liberty alleges that each Defendant violated the UTPCPL when it "advertise[d], market[ed], and otherwise convey[ed] to the general public and potential purchasers of residential [microwaves], such as the subject [microwave] at issue, that they are safe and fit for the particular purposes that this product was to be used for." (Doc. No. 1 at 21.) GE Appliances takes issue with this Count, asserting that First Liberty "pleads no facts, whatsoever, in support of its claim." (Doc. No. 5 at 17.) In particular, GE Appliances argues that First Liberty has failed to plead "what was allegedly said, when, by which defendant, to whom, and in what medium"; what "'particular purpose' for the microwave was contemplated by the purported advertisements"; and whether the Wootens justifiably relied on any statement by Defendants. (*Id.*)

The purpose of the UTPCPL is to "protect[ ] the public from unfair or deceptive business practices and provide[ ] for a private right of action." *Kirwin v. Sussman Auto.*, 149 A.3d 333,

---

[5] In the alternative, the Court dismisses this Count as uncontested because as discussed *supra* n.1, First Liberty failed to specifically respond to this argument in its opposition brief. *See, e.g.*, *Ghoubrial v. Johanns*, Civil Action No. 05-CV-04256, 2006 WL 8459472, at *2 n.6 (E.D. Pa. Sept. 29, 2006) ("[P]laintiff filed a response but did not address the sovereign immunity argument made by the United States. The motion to dismiss by the United States could, therefore, be granted as uncontested."); *Bowser v. Bogdanovic*, No. 08-cv-847, 2010 WL 1462548, at *5 (M.D. Pa. Apr. 9, 2010) ("We note that, as a matter of course, the Court could dismiss Plaintiffs' claims because Plaintiffs failed to respond to the arguments for dismissal of those claims set forth in the Defendants' Brief in Support of the instant Motion."). For that reason, First Liberty's request for leave to amend is also denied as to this Count. *See, e.g.*, *Jones v. Brouse*, CIVIL NO. 3:15-CV-0680, 2016 WL 1242347, at *4 (M.D. Pa. Mar. 30, 2016) ("Because plaintiff has failed to oppose the motion to dismiss, granting leave to amend would be futile.").

11

336 (Pa. Super. 2016).  To that end, the Act states that "[a]ny person who purchases . . . goods . . . primarily for personal, family or household purposes" and "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by . . . this [A]ct, may bring a private action to recover actual damages . . . ."  73 Pa. Stat. & Cons. Stat. § 201-9.2(a).  The Act then lists 21 unlawful acts or practices.  *See id.* §§ 201-2(4), 201-3.  First Liberty does not clarify which of these 21 acts is it issue here, stating generally that Defendants made "material misrepresentations" about the microwave because they "advertise[d], market[ed], and otherwise convey[ed] to the general public and potential purchasers of residential [microwaves] that they are safe and fit for the particular purposes that this product was to be used for." (Doc. No. 1 at 21.)  Accordingly, the Court assumes, as did GE Appliances, that First Liberty is pursuing a UTPCPL claim under the twenty-first unlawful act.  *See* 73 Pa. Stat. & Cons. Stat. § 201-2(4)(xxi).  This "catch all provision" prohibits a manufacturer or seller from "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  *Id.*; *see also Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 465 (E.D. Pa. 2009) (describing subsection xxi as covering "fraudulent or deceptive conduct"); *Kirwin*, 149 A.3d at 336 (analyzing the plaintiff's claim for deceptively advertising the price of a vehicle as stating a violation under subsection xxi).

To state a claim for deceptive conduct under the catch all provision, a plaintiff must allege "(1) a deceptive act; (2) the plaintiff's justifiable reliance on that deceptive act; and (3) that the plaintiff's justifiable reliance resulted in ascertainable loss."  *Corsale v. Sperian Energy Corp.*, 412 F. Supp. 3d 556, 564 (W.D. Pa. 2019); *see also Yoca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) ("To bring a private cause of action under the UTPCPL, a

plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."). That means the plaintiff "must allege facts showing a 'deceptive act,' that is 'conduct that is likely to deceive a consumer acting reasonably under similar circumstances.'" *Seldon*, 647 F. Supp. 2d at 470 (quoting Black's Law Dictionary 455 (8th ed. 2004)). And the "plaintiff must allege justifiable reliance, in other words 'that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the defendants' misrepresentation' or deceptive conduct." *Id.* (quoting *Hunt*, 538 F.3d at 223 n.14). "Finally, the plaintiff must allege that this justifiable reliance caused ascertainable loss." *Id.*

First Liberty has not satisfied these requirements. First Liberty alleges in conclusory fashion that "Defendant advertises, markets and otherwise conveys to the general public and potential purchasers of residential Products, such as the subject Product at issue, that they are safe and fit for the particular purposes that this product was to be used for." (Doc. No. 1 at 21.) But it has not identified what those advertisements "convey," when they were made, or the "particular purposes" for which the microwave is supposedly "safe and fit." Neither has it alleged facts tending to show that the Wootens relied on any such representation, or that their reliance was justifiable.[6] *See Hunt*, 538 F.3d at 227 ("Hunt has not adequately alleged that he justifiably relied on Smokeless's deception, for he has not alleged that Smokeless's deception induced him to purchase Smokeless's products or engage in any other detrimental activity."); *Seldon*, 647 F. Supp. at 470–71 ("As to the loan, plaintiffs merely allege a list of

---

[6] Because First Liberty has not alleged facts tending to show justifiable reliance, the UTPCPL claim fails regardless of the subsection under which First Liberty intended to bring its claim. *See Hunt*, 538 F.3d at 221 ("[D]ue to the causation requirement in the [UTPCPL]'s standing provision, a private plaintiff pursuing a claim under the statute must prove justifiable reliance." (internal citations omitted)).

13

misrepresentations.  Plaintiffs do not even describe the actual terms, conditions, or characteristics of the loan and in what respect defendants misrepresented these aspects of the loan.  Without these allegations, plaintiffs fail to plead justifiable reliance as they simply do not set forth how their knowledge of the loan's actual terms would have changed their conduct." (cleaned up)); *Monck v. Progressive Corp.*, Civil Action No. 3:15–CV–250, 2015 WL 1638574, at *7 (M.D. Pa. Apr. 13, 2015) ("Plaintiff presents only conclusory allegations of alleged wrongdoing and her related reliance.  For example, Plaintiff does not identify the false or fraudulent statements allegedly made related to the application for insurance or how she relied upon them; she does not identify how confusion was created, how advertising was misleading, or how Defendants failed to comply with the written terms of a guarantee or how she relied upon any of this allegedly wrongful conduct.  Because Plaintiff has not alleged actions pursued on the basis of the allegedly wrongful conduct and this is a necessary element of her UTPCPL claim, this claim is properly dismissed."). *Contra. Seldon*, 647 F. Supp. 2d at 471 ("[P]laintiffs have alleged a viable claim on the basis of misrepresentations involving the repayment plan. . . . [G]iven the dire financial circumstances that allegedly drove plaintiffs to enter the repayment plan, plaintiffs relied on defendants' representation that payments under the plan would remain at $700.  Variable payments would have left plaintiffs in the same position as before the repayment plan—unable to pay their mortgage.  Thus, plaintiffs allege that defendants' promises led them to accept the repayment plan and not seek alternative solutions to their financial troubles.").

In short, First Liberty has not alleged *facts* tending to show a deceptive act or justifiable reliance.[7]  Because it makes only conclusory assertions, the motion to dismiss is granted as to Count V.[8]

### E.     Attorneys' Fees

Finally, GE Appliances moves for dismissal of First Liberty's claims for attorneys' fees because First Liberty has failed to identify a contract or statute that allows it to recover attorneys' fees for its counts for strict liability, negligence, breach of implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose.  (Doc. No. 5 at 18.)  And although the UTPCPL contemplates fee shifting, that statute cannot support recovery because it has been dismissed.  (*See id.* at 18 n.5.)  Once again, First Liberty has failed to address this argument.[9]  In any event, the Court agrees with GE Appliances.

The American Rule requires each party to bear its own costs and fees absent a fee shifting provision in a contract or statute.  *See Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 482–83 (Pa. 2009) ("Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception.").  First Liberty has not identified

---

[7] To the extent First Liberty intended to bring a claim for fraud, and not merely deceptive conduct, under the catch all provision, its claim likewise fails.  Fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016) ("Unlike fraud claims, deception claims are not subject to Rule 9(b) and need only comply with the pleading requirements imposed by Rule 8(a).").  Having failed to satisfy the lenient pleading requirements of Rule 8(a), First Liberty has necessarily failed to state a claim for fraud under Rule 9(b).

[8] As with Count IV, the Court, in the alternative, dismisses this Count as uncontested because First Liberty failed to specifically respond to GE Appliances's arguments on this issue.  *See supra* nn. 1, 5.  For that reason, the motion to amend is also denied.

[9] Accordingly, the Court once again finds this argument uncontested and denies the motion to amend.  *See supra* nn. 1, 5, 8.

15

any statute which allows fee shifting here, and as GE Appliances notes, the UTPCPL cannot serve as the source of fee shifting because First Liberty's UTPCPL claim has been dismissed as against it.

The motion to dismiss is granted as to the request for attorneys' fees.

## IV. CONCLUSION

The motion to dismiss is granted as to Counts IV, V, and First Liberty's request for attorneys' fees. The remainder of the motion to dismiss is denied. First Liberty's request for leave to amend is also denied because First Liberty failed to specifically respond to GE Appliances's arguments as the dismissed claims. An appropriate order follows.